**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA**

**PANAMA CITY DIVISION**

| | | |
|---|---|---|
| A.L., by P.L.B., and | ) | |
| P.L.B. for herself | ) | |
| Plaintiffs | ) | Case No. 5:13-cv-00178-RS-CJK |
| **vs.** | ) | |
| | ) | |
| Jackson County School Board, | ) | |
| Defendant | ) | |

AMENDED COMPLAINT

<u>PARTIES AND JURISDICTION</u>

1.    Jackson County School Board ("JCSB")  is the constitutional entity authorized to operate,

control, and supervise the public schools in Jackson County, Florida.   It is a "local

educational agency" under the Individuals with Disabilities in Education Act ("IDEA"), 20

USC § 1401(19), and is therefore responsible for providing AL with a "free appropriate

public education" ("FAPE"), 20 U.S.C. §1401(9).

2.    PLB, is the mother of a rising twelfth grade student, A.L., currently enrolled in a high

school operated by JCSB.  A.L. 's resides in Jackson County FL

3.    A.L. is identified by JCSB as a student who is eligible to receive special education and

related services pursuant to the IDEA.

4.    JCSB made an impartial due process hearing request on July 27, 2012, in Florida Division

of Administrative Hearing ("DOAH") Case No. 12-2562E against AL. and PLB.

5.    AL and PLB asked DOAH to find the impartial due process hearing request insufficient

and to dismiss claims against PLB, which motions were denied.

6.    AL and PLB also filed counterclaims for retaliation and discrimination.

7.    This case is an appeal of findings of fact, and conclusions of law in the Final Order filed

February 13, 2013 in DOAH 12-2562, as well as appeal of certain orders. [FLDOE-

Redacted copy attached.]

8.    This court has jurisdiction under IDEA, 20 U.S.C. 1415(i)(2)(A).

9.    Venue is properly laid in the United States District Court of Florida, Northern District,

Panama City Division, as authorized by 28 U.S.C. §1391 and 1392.


FACTS

10.    JCSB allowed PLB to record meetings with school staff and Individual Education Program

("IEP") meetings without restriction or limitation through June 2010.

11.    In August 2010 AL made complaints about demeaning words made by a JCSB coach about

his disability.

12.    In October 2010 PLB used a recording in her advocacy for AL's accommodations.

13.    In or around October 2010,  JCSB began to refuse to hold meetings with PLB if she wanted

to record them.

14.    JCSB did agree to allow recording of an IEP meeting that it wanted to hold in November

2010, but has not since.

15.    AL wants to attend IEP meetings but found them too stressful because of his disability.

16.    AL wanted to be able to listen to recorded IEP meetings to accommodate his disability.

17.    AL's father and step-father were unable to attend IEP meetings, and wanted to know what

took place in them, by being able to listen to the recordings of them.

18. PLB sought recording so AL's fathers could participate, and because her increasing levels of stress affected her memory and concentration, she wanted to be able to have trusted advisors help her learn to advocate more effectively, and to have equal opportunity to present what happened if she had to bring claims at due process hearings.

19. JCSB did not allow AL to use his recording pen to take notes in classes as he deems appropriate.

20. JCSB refused to allow recording because PLB engaged in protected activities under IDEA and Section 504/ADA.

21. JCSB records the public, students and teachers, at Marianna High School and on buses, without obtaining student, parent or teacher consent.

22. JCSB, its officials, employees and/or agents have no legitimate right of privacy in its conversations and meetings with parents or in its provision of free appropriate public education to students, under federal or state law, that would prevent recording JCSB officials, employees and/or agents in the course of their public duties without their consent.

23. JCSB permitted at least one student and/or parent other than AL/PLB to record an IEP meeting during 2012, even when it refused to allow AL/PLB to do so.

24. JCSB's refusal to allow AL/PLB to record public officials, employees and agents in the course of their public duties at school and in IEP meetings is arbitrary and capricious.

25. JCSB has no lawfully enacted policy prohibiting recording of its staff in the course of their public duties.

26. JCSB has no lawfully enacted policy prohibiting students from using recording devices to facilitate note taking in their school classrooms.

27.   JCSB did pass a disciplinary policy in or about May 2013 that makes recording at school an offense that may result in suspension.

28.   There is no record in the minutes that JCSB voted to initiate litigation for the claims it raised in DOAH 12-2562E, nor that it voted to file the due process request that became DOAH 12-2562E.

29.   JCSB cannot lawfully commence litigation except by voting to do so.

30.   JCSB has not lawfully delegated to anyone its power to sue under Section 1001.41(4), Florida Statute.

31.   JCSB filed a due process request on July 27, 2012.

32.   JCSB's due process request was filed against PLB as well as AL.

33.   JCSB's due process request does not pertain to a matter relating to the identification, evaluation or education placement of the child, or the provision of a free appropriate public education.

34.   The JCSB due process request did not contain a "description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem".

35.   IDEA, 20 U.S.C. 1415(b)(7)(A)(ii)(III) requires requests for due process contain "description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem".

36.   JCSB's request for due process did not contain the material required in Section 1415(b)(7)(A)(ii)(III).

37.    The request does not identify the specific events the JCSB sought review of, such that PLB and AL could prepare to address them.

38.    There is no case reported in any jurisdiction, other than DOAH 12-2562, in which a school district filed a due process request under IDEA or Section 504/ADA or any law against the parent and/or child who wished to record IEP meetings.

39.    JCSB intentionally and/or with deliberate indifference discriminated against AL because of his disabilities by refusing to allow him to record instruction as a memory aid.

40.    JCSB retaliated against AL/PLB by refusing to allow them to record because they engaged in protected activities under IDEA, Section 504/ADA.

41.    The Administrative Law Judge ("ALJ") in DOAH 12-2562 issued a Final Order on February 13, 2013.

42.    The ALJ did not place the burden of proof on the party (JCSB) bringing the action, as required by law.

43.    The Final Order contains findings of fact unsupported by the evidence, and conclusions of law that are erroneous.

44.    JCSB's prevention of recording by AL/PLB deprived AL/PLB the benefit of the full and equal participation in IEP meetings required by federal law.

45.    JCSB denied AL FAPE by not letting him record his classroom instruction.

46.    JCSB denied AL FAPE by not letting AL/PLB record IEP meetings.

47.    JCSB employees and officials have no reasonable privacy interest in meetings with parents and students, such that their consent to the recording is required.

48.  JCSB's prohibition against recording violates AL/PLB's First Amendment right under the United States Constitution to petition government by recording public employees in the course of their public duties, and against their wishes.

49.  JCSB cannot be excused from its duty to hold IEP meetings with AL/PLB because AL/PLB wants to record such meetings.

50.  JCSB may not refuse to allow the reasonable accommodation of use of recording devices for classroom instruction to AL whose disability impacts memory, or any similar need.

51.  PLB has had to spend personal funds because of this litigation.

CLAIMS

52.  The facts above are incorporated herein in their entirety, as though written.

53.  JCSB's due process request was insufficient under IDEA.

54.  The Final Order in DOAH 12-2562 contains findings of fact unsupported by the evidence.

55.  The Final Order in DOAH 12-2562 contains conclusions of law that are erroneous.

56.  The ALJ erred in denying AL/PLB's motion to require court reporting and verbatim transcripts of pre-hearing hearings.

57.  The ALJ erred in denying AL/PLB's motion to dismiss PLB, individually, as a party.

58.  The ALJ erred in finding that JCSB had not violated IDEA and denied AL FAPE by refusing to allow AL/PLB to record IEP meetings and classroom instruction.

59.  JCSB's prohibition of recording is an unadopted rule and as such is unenforceable.

60.  PLB gave notice to JCSB in 2010 that its prohibition against recording is an unadopted rule, but JCSB has not conducted rulemaking for it.

61.   JCSB's prohibition of recording is arbitrary and capricious and is therefore not a lawful rule.

62.   JCSB intentionally and/or with deliberate indifference discriminated against AL because of his disability and retaliated against AL/PLB because they engaged in protected activities, including but not limited to filing DOAH 12-1273E, by filing the claims in this case and by not allowing AL to record his instruction as a memory aid, and not allowing AL/PLB to record their interaction with school staff.

REMEDIES

63.   WHEREFORE, AL/PLB request this court to order JCSB to:

64.   Overturn the Final Order on the basis that JCSB's due process request against PLB does not conform to the law.

65.   Overturn the findings of fact that are not supported by the evidence, and the conclusions of law that are erroneous.

66.   Find that JCSB has not proven that its prohibition of recording is lawful.

67.   Find that JCSB's prohibition of AL/PLB's recording denies AL/PLB full parent/student participation in IEP meetings in violation of the IDEA, and denied AL FAPE.

68.   Find that JCSB is not excused from its duty to hold IEP meetings with AL/PLB because AL/PLB wants to record such meetings.

69.   Find that JCSB may not refuse to allow the reasonable accommodation of use of recording devices for classroom instruction to AL whose disability impacts memory, or any similar need.

70.     Find that the ALJ erred in denying AL/PLB's motion to require court reporting and

        verbatim transcripts of pre-hearing hearings, and award reimbursement for such costs.

71.     Find that the ALJ erred in denying AL/PLB's motion to dismiss PLB, individually, as a

        party.

72.     Award AL compensatory education in the amount of 960 hours at the rate of $50/hour for

        school year 2012-2013, and 6 hours per day for each day during 2013-2014 that JCSB

        continues to deny AL recording of classroom instruction.

73.     Award AL/PLB attorneys fees and costs, including expert fees for having to litigate the

        case.

74.     Award AL/PLB out of pocket costs they have because of the litigation.

75.     Award AL/PLB such other remedies as the court determines just and equitable.

Respectfully Submitted this 12th day of August 2013.


CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been filed electronically and furnished
thereby by Notice of Electronic Filing on the above date to Bob L.Harris, Messer, Caparello &
Self, PO Box 15579, Tallahassee FL 32317, bharris@lawfla.com   It was also delivered to
                                process server for personal service on August 12, 2013

/s/Rosemary N. Palmer
Rosemary N. Palmer
FBN 070904
5260 Pimlico Drive
Tallahassee FL  32309
floridalawlady@gmail.com
850 668 9203
ATTORNEY FOR PLAINTIFFS

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

JACKSON COUNTY SCHOOL BOARD,      )
                                  )
        Petitioner,               )
                                  )
vs.                               )    Case No. 12-2562E
                                  )
█████ AND ████████, PARENT OF     )
,                                 )
                                  )
        Respondents.              )
_____ )

FINAL ORDER

Pursuant to notice, the Division of Administrative Hearings,
by its duly-designated Administrative Law Judge, Diane
Cleavinger, held a formal hearing in the above-styled case on
September 10, 2012, in Marianna, Florida.

APPEARANCES

For Petitioner:  Bob Harris, Esquire
                 S. Denay Brown, Esquire
                 Richard Akin, Esquire
                 Messer, Caparello and Self, P.A.
                 2618 Centennial Place
                 Tallahassee, Florida  32308

                 and

                 Frank Bondurant, Esquire
                 Bondurant & Fuqua
                 4450 Lafayette Street
                 Marianna, Florida  32447

For Respondents: Rosemary N. Palmer, Esquire
                 5260 Pimlico Drive
                 Tallahassee, Florida  32309

STATEMENT OF THE ISSUE

The issue in this case is whether the parent of █████████

███████, has a right to tape record IEP meetings involving ███████

a student enrolled with the Jackson County School Board (JCSB

or School Board).

PRELIMINARY STATEMENT

On April 6, 2012, Petitioner JCSB filed a Request for

Administrative Hearing against Respondents, ██████ and ██████,

with the Division of Administrative Hearings (DOAH).

Petitioner's request for due process was based on the

Petitioner's inability to hold an IEP meeting for the student

██████ due to ██████ insistence on recording such meetings.

After a pre-hearing conference with all of the parties, a Notice

of Hearing was entered on August 10, 2012, scheduling the hearing

for September 10, 2012, in Marianna, Florida.

On August 13, 2012, Respondents filed Respondents' Notice of

Insufficiency and Answer and Defenses to Petition and Counter

Claims Against Petitioner and Individuals.  By Order dated

September 7, 2012, this Court dismissed Counts II and III of

Respondents' Counterclaim, but allowed Counterclaim Count I to be

raised during the Final Hearing in this matter to the extent the

claims of discrimination and retaliation related to the provision

of a "free appropriate public education" (FAPE) for ██████

During the hearing, Petitioner called two witnesses to testify and offered three exhibits into evidence.  Respondents testified in their own behalf and called six witnesses to testify.  Respondents also offered 15 exhibits into evidence. After input from the parties regarding this matter and the three other cases between these same parties pending before DOAH (10-10485E, 12-2386F, and 12-1273E), a schedule to file proposed final orders was established.  Due to the complexity and multiplicity of issues raised between these parties, time for completion of this case was extended pending resolution of the other cases.

After the hearing, Petitioner filed a Proposed Final Order in this matter.  However, even after several extensions of time to file, Respondents did not file a proposed final order.

<u>FINDINGS OF FACT</u>

1.  The Jackson County School Board is the constitutional entity authorized to operate, control, and supervise the public schools in Jackson County, Florida, and is a "local educational agency" under the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1401 <u>et</u> <u>seq.</u>  As such, the Jackson County School Board is responsible for providing ███ with FAPE, 20 U.S.C. § 1401(9).

3

2.    ████   is the biological parent of  ████  and is the parent
who  has  undertaken  primary  responsibility  for  overseeing  ████
educational needs.

3.    ████   is the biological parent of  ████.  In regards to
████  education,  ████  has not attended an IEP meeting for  ████
has not personally spoken with any of  ████   teachers about  ████
education, has not spoken to any Jackson County high school
administrator about  ████  education, has not requested to attend
████   IEP meetings, has not written any letters or emails to the
School Board requesting information regarding  ████  IEP meetings,
is not aware of  ████  IEP meeting dates, is not aware of  ████
classes for the current semester, does not know the name of any
of  ████   teachers, has not spoken to any of  ████  teachers since
████  has been in high school, and is not aware of  ████  FCAT
scores.   Indeed,  ████  has not significantly participated in or
overseen  ████  education, preferring to leave such matters to
████.

4.    ████   is the step-parent of  ████   In regard to  ████
education,  ████   has not asked to attend or attended an IEP
meeting for  ████  has not personally spoken with any of  ████
teachers about  ████  education, has not spoken to any Jackson
County high school administrator about  ████  education, has not
written any letters or emails to the School Board requesting
information regarding  ████  IEP meetings over the past three

4

years, is not aware of ███ IEP meeting dates, is not aware of
███ classes for the current semester, does not know the name
of any of ███ teachers, and is not aware of ███ FCAT scores.
Overall, ███ parental role is to provide for the family. ███
is interested in ███ and does care about ███ well-being. For
instance, ███ has escorted ███ and ███ to Colorado when
███ had ███ evaluated and tested by an expert for DOAH case
number 10-10485. ███ has also escorted ███. to summer camps
or seminars ███. has attended. However, like ███ ███ has
elected not to be involved in the details of ███ education,
preferring to leave such matters to ███.

5.  In fact, both ███ and ███ have been satisfied with
whatever information ███ has passed along to them regarding
███ education.

6.  ███ has been enrolled as a student with the Jackson
County School District since approximately 2001.

7.  As of the date of the hearing, ███ was enrolled in a
county high school and is currently in the ███ grade. As
such, ███ is within the time period for development of
transition services leading into life after high school and/or
postsecondary education.

8.  ███ is identified by the County School District as a
student with a disability who is eligible to receive special
education and related services pursuant to IDEA.

9.   Under IDEA, the School Board and ▮▮▮ have held formal IEP meetings, Extended School Year (ESY) meetings and evaluation meetings involving the educational needs of ▮▮ . since approximately 2001.

10.   These formal meetings are official meetings and are attended by the parent, a number of school personnel and other professionals.  All the attendees provide input into the status of ▮▮ education and plan the course of that education.

Jackson County does not generally record these meetings, but does have notes taken during these formal meetings to memorialize the discussions and decisions made during those meetings.  These notes become part of the educational record of a student.

Importantly, such formal meetings are confidential as is the educational record of all students.  Additionally, these meetings are not subject to the Government in the Sunshine laws of the State of Florida.  However, the evidence did not demonstrate that these meetings were private (as opposed to confidential) meetings in which the participants had any reasonable expectation of privacy.  Indeed, decisions and discussions during these meetings frequently become the subject of review by both the state and federal government, as well as, the subject of IDEA due process hearings.  As such, participants do not have a reasonable expectation of privacy in the discussions and/or decisions which occur during such formal meetings.[1/]

11.   On the other hand, the School Board is charged with the responsibility of ensuring the confidentiality of these meetings and a student's educational record, as well as, the responsibility to conduct such meetings and establish reasonable rules for such meetings.

12.   Additionally, ███ has met with a variety of teachers and Board personnel in less formal meetings regarding ███ education.  Official notes are not taken at such meetings. However, personal notes may be taken by any of the parties to the meetings.  Depending on the facts, participants in these meetings may have a reasonable expectation of privacy in the conversations that occur during these meetings.  Further, as with the formal meetings, the School Board is charged with the responsibility of ensuring the confidentiality of a student's educational record, and may establish reasonable rules for such meetings.

13.   Towards that end, the School Board does not permit recordation of formal or informal meetings if any meeting participant objects to being recorded.  The Board's position was based on informal discussions among various school districts and DOE personnel about balancing IDEA parental participation requirements with an individual's right of privacy reflected, in part, in chapter 934, Florida Statutes, which provides civil and criminal penalties for the nonconsensual interception of certain oral communications in which a participant in the conversation

7

has a reasonable expectation of privacy.  Further, the School
Board, also, wanted to maintain a less adversarial and tense
atmosphere during such meetings.  However, in order to comply
with IDEA, the School Board also permits recordation of formal
meetings over participant objections when such recordation is
necessary to mitigate some impairment of a participant in the
meeting that interferes with that person's ability to participate
in such meeting or the planning of the relevant student's
education.  The School Board's position is a reasonable means to
exercise its duty to establish rules for these meetings and keep
these meetings confidential.  Further, the School Board's
position meets IDEA requirements.

14.  In the past, ████ at times, has insisted on tape
recording some IEP meetings, evaluation meetings, parent-teacher
conferences involving ███ and other meetings with staff of the
School Board.

15.  However, the evidence showed that ████  has provided
meaningful input at ███ IEP meetings, ESY meetings, evaluation
meetings, and parent-teacher/staff conferences and has generally
actively participated in such meetings.  More importantly, ████
participation or opportunity to participate has been meaningful
irrespective of whether such meetings were recorded or not
recorded.  There was no convincing or credible evidence that
electronically recording meetings with school personnel or

8

administrative staff was necessary to either Respondents'
participation in or understanding of such meetings.  Further,
there was no convincing or credible evidence that electronically
recording these meetings was necessary to informing ████ other
parent and step-parent regarding the education of ████ .  Indeed,
the evidence was clear that ████ was fully capable of and did
communicate any necessary information to ████ biological parent
and step-parent irrespective of whether the meetings were
recorded or not recorded.

     16.  Of more recent note and even though the automatic stay
under IDEA was in effect, an IEP meeting was scheduled for
August 19, 2011, to attempt to develop a new IEP for ████ .
Prior to the August IEP meeting, the required participants, as
well as ████ were advised that they could not record the IEP
meeting of August 19, 2011, because there were required
participants who did not want to be recorded.  Also, prior to the
August IEP meeting, ████ advised the School Board that ████
would be recording the meeting and insisted that necessary IEP
team members who did not consent to be recorded not be invited to
participate in the meeting.  ████ demand regarding the
participation of team members was unreasonable.

     17.  The required participants for the IEP meeting for ████
. were present in a meeting room at the county high school on
August 19, 2011, and were prepared to discuss the IEP for ████ .

18.    █████    came to the county high school to attend the
IEP meeting but left the premises and did not participate when
█████    was again advised that the meeting would not be recorded.
As a consequence, the August 19, 2011, IEP meeting was cancelled
when  █████    refused to participate.

19.  Later on May 31, 2012, and while the automatic stay
under IDEA was in effect, the School Board scheduled a meeting to
consider  █████  educational needs during the summer of ESY 2012.
█████    had earlier advised the School Board that  █████    would
be recording the meeting and insisted that the School Board only
invite persons who consented to be recorded to the May 31st ESY
meeting.  █████    demand regarding invitees was unreasonable.

20.  On May 31, 2012, █████    brought  █████   recorder to the
ESY meeting and insisted on recording the meeting.  █████  school
team members who were in the room to discuss  █████   summer 2012
ESY program were polled and did not consent to be recorded.
█████    refused to participate in the meeting if  █████    could
not record the meeting.  As a consequence, █████    left the
meeting.  The meeting was then reasonably cancelled.

21.  After coordinating the time with  █████    and required
staff, the School Board also scheduled a meeting on July 16,
2012, to discuss conducting a re-evaluation of  █████  .  The
purpose of the re-evaluation meeting was to gather information on
█████    present levels of performance.  █████    and  █████    were

given notice and invited to participate in the re-evaluation
meeting.

22.  Prior to the meeting, ████    provided a list of tests
and areas for testing that ████   desired to be tested in a re-
evaluation of ███ .  ████ and ███ did not attend the re-
evaluation meeting on July 16, 2012.  However, ████  instructed
School Board Exceptional Student Education Director Shawn Larkin
to proceed with the meeting and to consider the list that ████
provided.

23.  The re-evaluation meeting was held by the School Board
team members on July 16, 2012.  During the meeting, the IEP team
considered the written input of ████  at the July 16, 2012, re-
evaluation meeting.  Notes were kept of the re-evaluation
meeting, but the meeting was not electronically recorded.

24.  As justification for the demand that ████  be allowed
to record IEP and other meetings involving ████  ████   claims
that ████   needs an accurate record of the meetings for ████
and ████ other parent and step-parent.  This desire is rooted in
████ mistrust of School Board personnel.  However, ████   is
not hearing impaired and does not have a language impairment.
████   understands what is being said at IEP meetings.  Further,
████   is not disabled and is able to and has taken notes during
IEP meetings.  ████  does not have a memory problem that would
prevent ████  from meaningful participation in or understanding

11

of the IEP process.  Moreover, ███      has not identified any

disability or limitation ████   has which would prevent ████

from meaningful participation in or understanding of the IEP

process.  In fact, ████   has been and remains capable of

understanding IDEA regulations, the IEP, and the IEP development

process, without electronically recording such meetings.  Indeed,

there was no credible evidence that such electronic recordation

of meetings was necessary for accuracy, participatory or

informational purposes.

   25.  Additionally, other members of the IEP team for ████

have taken notes during IEP meetings and provided those written

notes to ████

   26.  Unfortunately, ████   continues to refuse to attend IEP

meetings, evaluation meetings, or parent-teacher conferences when

████ is denied the ability to tape-record such meetings.

However, there is no general right to record any conversation or

meeting.  Further, there is no need to record demonstrated by the

evidence in this case.  As such, ████ did not identify or produce

any evidence of any protected activities under IDEA in which

████   was engaged in and in response to which the School Board

retaliated.  Further, ████ did not identify or produce any

evidence of discrimination or retaliation by the School Board

related to the provision of FAPE for ████.

<u>CONCLUSIONS OF LAW</u>

27.  The Division of Administrative Hearings has jurisdiction over the parties to and the IDEA subject matter claims of this proceeding.  § 1003.57(1)(b), Fla. Stat. (2010); Fla. Admin. Code R. 6A-6.03311(9) (2012).

28.  Florida Administrative Code Rule 6A-6.03311(9)(a) provides:

> A due process hearing request may be initiated by a parent or a school district as to matters related to the identification, evaluation, or educational placement of a student or the provision of FAPE to the student.

29.  Courts have held that issues related to recording of IEP meetings are the proper subjects for a due process complaint.  In <u>Gardner v. School Board Caddo Parish</u>, plaintiff parents unsuccessfully sought an order enjoining implementation of a district's prohibition on recording IEP meetings.  958 F.2d 108, 111 (5th Cir. 1992).  The court held that the plaintiffs were required to raise their contention in an administrative proceeding -- i.e., via a due process complaint.  <u>Id.</u> at 109; <u>See also</u> <u>Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist.</u>, 655 F. Supp. 2d 794, 803 (N.D. Ohio 2009) (question concerning recording IEP meeting was properly decided by hearing officer).

30.  Respondent, Jackson County School Board is a "local educational agency or LEA" under the IDEA, and is therefore

responsible for the identification, evaluation, and educational placement of ███ as well as the provision of FAPE to ███ § 1003.57(1)(a) and (b), Fla. Stat.; Fla. Admin. Code R. 6A-6.03311(9).  The resolution of this matter is necessary to allow the School Board to continue to meet its responsibilities under the IDEA and provide ███ with FAPE.

31.  Further, school districts must assist students with disabilities in developing appropriate goals and transition plans for life after high school.  In this case, ███ will be entering ███ junior year of high school which necessitates planning for transition issues to post-high school life.  As such, participation by parties having knowledge of ███ educational needs is essential and should include staff of the District, ███, and ███  However, the disagreement between the parties regarding the recording issue has made the scheduling and attendance of IEP meetings and related matters difficult, including the development of ███ IEP for ███ junior year. ███ unreasonably refuses to attend such meetings if ███ is not permitted to record, despite attempts by the School Board to convene such meetings.  Thus, an actual present controversy exists between the parties regarding whether the Respondent has a right to tape-record meetings involving the educational placement and progress of ███ and whether the School Board violates the

IDEA and/or accompanying federal and State regulations by
refusing to allow such recording.

32.  Notably, states must comply with IDEA in order to
receive federal funding for the education of handicapped
children.  As such, IDEA requires states to establish policy
which ensures that children with disabilities will receive FAPE
through an IEP that accounts for the educational needs of each
disabled child.

33.  As part of an educational program, IDEA provides the
opportunity for parent participation in the process of
identifying, evaluating, and programming for students with
disabilities.  See C.F.R. §§ 300.501(b), 300.344(a)(1), and
300.517.  However, there is no provision in IDEA or its
implementing regulations that requires or authorizes the School
Board to record meetings regarding the student as part of this
process, nor is there any provision that provides for a parental
right to record these proceedings.

34.  Like its federal counterpart, the State of Florida has
adopted procedural safeguards consistent with 34 C.F.R. §§
300.500-300.529, providing eligible students and their parents
with certain procedural safeguards, including due process
protections.  34 C.F.R. §§ 300.121 and 300.129; OSEP Letter to
William L. Librera, Ed.D., (Dec. 20, 2004); Fla. Admin. Code R.
6A-6.03311.  These procedural safeguards do not include a

parental right to require recording of student IEP meetings or other meetings involving the student.

35.   The Office of Special Education (OSEP) statements regarding the right of a school board and a parent to record IEP meetings are not binding on this tribunal but are highly persuasive.  Since 1991, OSEP has taken the position that neither a school board nor a parent has a right to record.  OSEP Memorandum 91-24, (July 18, 1991).  In its 1991 memorandum, OSEP stated that a school district has the option to require, prohibit, limit, or otherwise regulate the use of tape recorders at IEP meetings.  OSEP Memorandum 91-24, (July 18, 1991).  Subsequently, just nine years ago, in Letter to Anonymous, the Office of Special Education Programs confirmed that the IDEA "does not address the use of audio or video recording devices at IEP meetings, and no other federal statute authorizes or prohibits the recording of an IEP meeting by either a parent or a school official" and that "[t]herefore, an SEA or public agency has the option to require, prohibit, limit, or otherwise regulate the use of recording devices at IEP meetings."  OSEP Letter to Anon., 40 IDELR 70 (June 4, 2003).

36.   Moreover, IDEA was revised in 2004, 13 years after OSEP first stated its position on audio recording in 1991.  However, Congress did not include a right of either the parent or a school board to record meetings.  Individuals with Disabilities

16

Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004), effective July 1, 2005.  Further, no general right to record exists.  See Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist., 655 F. Supp. 2d 794, 803 (N.D. Ohio 2009).

 37.  Indeed, cases which have allowed parental recording have so held based on some impairment which prevented the parent from participating in the IDEA process and are factually distinguishable from the case here.  E.H. v. Tirozzi, 735 F. Supp. 53, 53 (D. Conn. 1990); V.W. v. Favolise, 131 F.R.D. 654, 654 (D. Conn. 1990).  In E.H. v. Tirozzi, a parent needed to record meetings because she was a native Danish speaker, and had trouble understanding and following written and spoken English. 735 F.Supp. 53, 57 (D. Conn. 1990).  In V.W. v. Favolise, a parent sought to record IEP meetings because a disabling injury to her hand made note taking difficult.  131 F.R.D. 654, 658 (D. Conn. 1990).  However, ▮ failed to produce any evidence which demonstrated that ▮ was not able to understand or participate in the IDEA process.  In fact, the evidence was clear that ▮ is very capable of and does participate in the IDEA process when ▮ elects to do so.  Accordingly, ▮ has no right to record ▮ IEP meetings or other meetings.

 38.  Further, the School Board has taken adequate steps to ensure parent and student participation at ▮ IEP meetings, absent recording.  OSEP Memorandum 91-24, (July 18, 1991).  The

17

evidence did not demonstrate that it is necessary that ▮▮▮ IEP

meetings be recorded in order for ▮▮▮ and ▮▮▮ to meaningfully

participate in the IEP process and otherwise exercise their

rights under IDEA.  OSEP Letter to Anon., 40 IDELR 70 (June 4,

2003).

39.  As such, the School Board's refusal to allow the

recording of ▮▮▮ IEP meetings has not denied ▮▮▮ FAPE and has

not impeded or otherwise affected ▮▮▮ or ▮▮▮ ability or right

to meaningfully participate in ▮▮▮ IEP meetings or otherwise

exercise their rights under the IDEA.

40.  Further, retaliation by a school district would have to

include evidence of the assertion of a right to which the School

Board retaliated in some form.  Elk Grove (Cal.) Unified School

District, 36 IDELR 160 (OCR 2001).  As stated herein, ▮▮▮ did

not have the right to record meetings.  Accordingly, there has

been no retaliation against the parent for asserting a recognized

right.

ORDER

Based on the foregoing Findings of Fact and Conclusions of

Law, it is ORDERED that Count I of Respondents' counterclaim is

dismissed and the parents of ▮▮▮ and the School Board should

participate in IEP meetings involving ▮▮▮ even if either the

parents or the required participants choose not to have the

meeting recorded.

18

DONE AND ORDERED this 13th day of February, 2013, in Tallahassee, Leon County, Florida.

S
_____
DIANE CLEAVINGER
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 13th day of February, 2013.

ENDNOTE

1/ See Dep't of Agric. & Consumer Servs. v. Edwards, 654 So. 2d 628 (Fla. 1st DCA 1995) and Fla. Agric. & Mech. Univ. v. Barnes, Case No. 06-027 (Fla. DOAH Aug. 2 2006; FAMU Oct. 24, 2006). Moreover, the School Board could record these formal meetings in lieu of note-taking and is encouraged to do so in this case. However, recordation is not required by IDEA and does not impact either the parent's participation or the provision of FAPE.

COPIES FURNISHED:

Bob L. Harris, Esquire
Messer, Caparello and Self, P.A.
2618 Centennial Place
Tallahassee, Florida  32308

Rosemary N. Palmer, Esquire
Rosemary N. Palmer, Attorney at Law
5260 Pimlico Drive
Tallahassee, Florida  32309

Lindsey Granger, Program Director
Bureau of Exceptional Education
  and Student Services
Department of Education
325 West Gaines Street, Suite 614
Tallahassee, Florida  32399-0400

Frank E. Bondurant, Esquire
Bondurant & Fuqua
4450 Lafayette Street
Marianna, Florida  32447

Steve R. Benton, Superintendent
Jackson County School Board
2903 Jefferson Street
Marianna, Florida  32446

Lois Tepper, Interim General Counsel
Department of Education
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida  32399-0400

<u>NOTICE OF RIGHT TO JUDICIAL REVIEW</u>

This decision is final unless, within 90 days after the date of
this decision, an adversely affected party:

> a)  brings a civil action in the appropriate
> state circuit court pursuant to section
> 1003.57(1)(b), Florida Statutes (2011), and
> Florida Administrative Code Rule 6A-
> 6.03311(9)(w); or

> b)  brings a civil action in the appropriate
> district court of the United States pursuant
> to 20 U.S.C. § 1415(i)(2), 34 C.F.R.
> § 300.516, and Florida Administrative Code
> Rule 6A-6.03311(9)(w).

20